IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL RIVERA, :
         Plaintiff, : 1:17-cv-1497
          :
v. : Hon. John E. Jones III
          :
RHU LIEUTENANT MONKO, *et al.*,:
         Defendants. :

## **MEMORANDUM**

### **March 20, 2019**

Plaintiff, Michael Rivera ("Rivera"), a state inmate, filed the instant action pursuant to 42 U.S.C. § 1983, on August 22, 2017, asserting that Defendants violated his rights under the equal protection clause of the Fourteenth Amendment while he was temporarily incarcerated at the State Correctional Institution at Retreat (SCI-Retreat), Hunlock Creek, Pennsylvania. (Doc. 1). Named as Defendants are the following individuals: RHU Lieutenant Monko ("Monko"); RHU Sergeant Adams ("Adams"); RHU Sergeant Gilbert ("Gilbert"); C.O. I. Alber ("Alber"); and C.O.I. John Doe.

In accordance with this Court's Order (Doc. 17) of February 26, 2018, the John Doe defendant will be dismissed pursuant to Federal Rule of Civil Procedure 4(m). Additionally, the Defendants' pending motion (Doc. 25) for summary judgment pursuant to Federal Rule of Civil Procedure 56, which is ripe for disposition, will be granted.

I.  **JOHN DOE DEFENDANT**

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against the defendant or order that service be made within a specified time." On February 26, 2018, more than six months after Rivera filed his complaint, the Court afforded him twenty days to identify John Doe and provide an address for the purpose of effecting service. (Doc. 17). At that time, the Court cautioned Rivera that his failure to comply with the Order would result in dismissal of John Doe in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. Rivera failed to comply with the Order. More than 90 days have elapsed since the filing of the action and John Doe has not been served due to the failure of Rivera to properly identify him. Consequently, John Doe will be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

II.  **DEFENDANTS MONKO, ADAMS, GILBERT AND ALBER**

　　A.  **Summary Judgment Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340

(3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323

(1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

  **B.**  **Statement of Material Facts**

On May 16, 2017, Rivera was temporarily transferred from his "home prison," the State Correctional Institution at Fayette ("SCI-Fayette), Labelle, Pennsylvania, to SCI-Retreat for a court appearance in *Commonwealth v. Rivera*, No. MJ-11309-CR-112-2017. (Doc. 26, ¶ 1; Doc. 29-1, ¶ 4) According to Rivera, he was criminally charged with assaulting DOC staff in January 2015, while he

was housed at the State Correctional Institution at Dallas ("SCI-Dallas"). (Doc. 29-1, ¶ 4).

Upon arrival, Rivera was housed in the mental health block in the RHU. (Doc. 26, ¶¶ 2, 3). He was not there for mental health reasons, but rather because it was the only cell available to accommodate his single-cell status. (*Id.* at 3). Because he is assigned to the Restricted Release List ("RRL"), he is indefinitely housed within the Restricted Housing Unit ("RHU") in any Pennsylvania prison to which he is confined. (Doc. 29-1, ¶ 5).

Rivera testified at his deposition that while temporarily housed at SCI-Retreat he did not communicate with any of the inmates on the block "because they weren't stable." (*Id.* at 4). Although he received the standard issue bedroll when he arrived, it did not contain towels, basic toiletries, a pen, request slips or grievance forms. (Doc. 26-1, p. 11). He wore an orange uniform; all other inmates on that block wore blue uniforms. (Doc. 26, ¶ 5). He had the opportunity to shower four times; he showered twice. (*Id.* at 6). He requested to go to yard five times; his requests were not acknowledged. (*Id.* at 7). In response to his requests to go to the law library, the guards instructed him to submit a request slip as outlined in the RHU Handbook. (Doc. 26, ¶ 8; Doc. 29-1, ¶ 9). He remained at

SCI-Retreat until May 25, 2017, at which time the DOC transferred him back to SCI-Fayette. (Doc. 26, ¶ 1).

He further testified that he knew he was treated differently than other RHU inmates housed at SCI-Retreat "[b]ecause I could see other inmates going to the yard every day, I could see other inmates going to library. Inmates would have some pens, and request slips and grievances, and they would receive them, and I would not." (*Id.* at p. 34). In response to the question "Do you think – is your theory that you were treated differently because you were from another prison?", Rivera stated "I was treated differently because I was there for a staff assault that I committed in January of 2015." (*Id.* at 34, 35).

### C. Discussion

This civil rights action is brought pursuant to 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST. amend. XIV; C*ity of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). "In order 'to state a claim for [a] 'class of one' [denial of]

equal protection, a plaintiff must at a minimum allege that [s]he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment.' *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008); *see also Renchenski v. Williams*, 622 F.3d 315, 337–38 (3d Cir. 2010) (analyzing such a claim in the prison context)." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 233 (3d Cir. 2015).[1]

In *Crawford–El v. Britton*, 523 U.S. 574 (1998), in noting that summary judgment serves as the ultimate screen to "weed out truly insubstantial lawsuits prior to trial," the Supreme Court held that in order to overcome summary judgment on a § 1983 claim where intent is an element of the claim, "the plaintiff may not respond simply with general attacks upon a defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Id.* at 600 (citing *Anderson*, 477 U.S. at 256-57).

Rivera asserts that Defendants intentionally treated him differently while temporarily housed at SCI-Retreat because of the January 2015 assault he

---

[1] Initially, Defendants argue that the class of one theory should be deemed inapplicable in the prison context. (Doc. 27, pp. 16-26). We reject this argument based on the Third Circuit precedent specifically applying the class of one theory to inmate equal protection claims in the prison context.

9

committed on a DOC staff member. (Doc. 26-1, pp. 34, 35; Doc. 29-1, ¶¶ 12, 33). However, neither his deposition testimony, nor his declaration, provides affirmative evidence of intent. On May 16, 2017, he asked Defendants Adams and Alber for access to the law library and they advised him to submit a request slip. (Doc. 26-1, p. 14; Doc. 29-1, ¶ 9). Rivera acknowledges that this is the procedure outlined in the RHU Handbook. (Doc. 29-1, ¶ 9). In his deposition testimony, and in his declaration, he recalls instances on May 18, 2017, and May 19, 2017, during which Defendants Adams and Monko indicated that they would "look into" his requests for forms and various privileges. (Doc. 26-1, p. 19; Doc. 29-1, ¶¶ 21, 31). On May 17, 2017, and May 18, 2017, in response to inquiries about his personal property, Defendant Albers either instructed him to speak to Defendant Gilbert or informed him that he would inform Defendant Gilbert about the request. (Doc. 29-1, ¶¶ 17, 24). He also states that on numerous occasions between May 17, 2017, through May 19, 2017, Defendants either "purposely ignored" him or, he "believes" that Defendants intentionally targeted and singled him out. (Doc. 29-1, ¶¶ 12-16, 18, 24-28, 31). He then concludes that:

> The entire time Plaintiff was temporarily housed at SCI-Retreat, from May 16, 2017, through May 25, 2017, Plaintiff was denied his yard privileges, a pen, some request slips, a grievance form, and his rights to access the RHU law library and possess his personal property inside his cell, just as all other similarly situated RHU prisoners on F-Unit are regularly permitted as a matter of policy, as outlined in the RHU Inmate

> Handbook, which Plaintiff believes was the result of Defendants' intentional, malicious, and concerted actions to intentionally target Plaintiff for the discriminatory denial of privileges and rights that all other similarly situated RHU prisoners of Plaintiff's same status and condition were regularly afforded as a matter of policy and law.
>
> Plaintiff believes that each Defendant acted in concert to intentionally target Plaintiff for the discriminatory denial of rights and privileges described herein because of the staff assault which Plaintiff committed on January 20, 2015, at SCI-Dallas, which was why Plaintiff was temporarily housed at SCI-Retreat, for a court appearance in that assault case.

(Doc. 29-1, ¶¶ 32, 33).

As is evident from the above, Rivera's deposition testimony and declaration contain statements are based on his "beliefs" that Defendants intentionally treated him differently based on an assault committed on a DOC staff member. The statements are speculative, wholly conclusory, and unaccompanied by any corroborating facts or affirmative evidence of Defendants' intent. As stated *supra*, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (stating "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment."). The

intent element of Rivera's equal protection claim simply has no evidentiary support. Accordingly, Defendants are entitled to an entry of summary judgment.

As the Supreme Court explained in *Celotex*, the " '[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' ' *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting FED.R.CIV.P. 1). Furthermore, '[r]ule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.' *Id.*" *Barnes Found. v. Twp. of Lower Merion*, 982 F. Supp. 970, 982 (E.D. Pa. 1997).

### III. <u>CONCLUSION</u>

Based on the foregoing, John Doe will be dismissed pursuant to Federal Rule of Civil Procedure 4(m) and Defendants' motion (Doc. 25) for summary judgment will be granted.

An appropriate Order will issue.